UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANNE DETTAR,

       Plaintiff,                                     Hon. Richard Alan Enslen

v.                                                     Case No. 1:06-CV-481

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years of age at the time of the ALJ's decision. (Tr. 17). She possesses a bachelor's degree and worked previously as a graphic artist. (Tr. 17, 80-85).

Plaintiff applied for benefits on July 6, 2003, alleging that she had been disabled since March 14, 2003, due to fibromyalgia, fatigue, anxiety, and depression. (Tr. 50-52, 68). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-49). On April 26, 2005, Plaintiff appeared before ALJ Steven Berlin, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 300-31). In a written decision dated September 9, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 16-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 6-8). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On January 13, 2000, Plaintiff was examined at the Otsego Medical Center. (Tr. 247). Plaintiff reported that she was experiencing back and neck pain. An examination revealed "increased muscle tension" and "multiple trigger points." Plaintiff was treated with "hot pack therapy" and "soft tissue techniques" which produced "good success." *Id.*

A March 23, 2000 examination revealed that Plaintiff was not experiencing any motor or sensory dysfunction. (Tr. 241). Plaintiff also reported that her medications were "helping her to maintain her activity" and that "manipulation and massage" were alleviating even more of her "discomfort." *Id.*

Between May 11, 2000, and May 2, 2002, Plaintiff received treatment at the Otsego Medical Clinic on numerous occasions. (Tr. 208-39). The treatment notes regarding such reveal that Plaintiff consistently exhibited "multiple trigger points" without evidence of motor dysfunction, muscle weakness, or sensory impairment. These treatment notes also reveal that Plaintiff consistently received "good immediate relief" when treated with "deep therapeutic massage" or "hot pack therapy." Plaintiff's care providers did not impose any limitations on Plaintiff's activities. *Id.*

On May 23, 2002, Plaintiff participated in an MRI of her lumbar spine, the results of which revealed "subtle signal changes consistent with degenerative disc disease [at] L5-S1 with [a] small right paracentral disc bulge or protrusion." (Tr. 129).

Plaintiff continued to receive treatment at the Otsego Medical Clinic on numerous occasions between June 5, 2002, and April 22, 2003. (Tr. 185-206). The treatment notes regarding such again reveal that Plaintiff consistently exhibited "multiple trigger points" without evidence of motor dysfunction, muscle weakness, or sensory impairment. Likewise, Plaintiff consistently received "good immediate relief" when treated with "deep therapeutic massage" or "hot pack therapy." No limitations were imposed on Plaintiff's activities. *Id.*

On April 23, 2003, Plaintiff sought treatment with Allegan County Community Mental Health Services. (Tr. 152-60). Plaintiff reported that she "long suspected that [she has] some anxiety and paranoid issues." (Tr. 152). Plaintiff denied experiencing panic attacks, but stated that

she is "nervous all the time" and "never settled." (Tr. 154). She reported that she does not experience difficulty sleeping. *Id.* Plaintiff's thought process was characterized as "tangential," but otherwise the results of a mental status examination were unremarkable. (Tr. 155-56). Plaintiff was diagnosed with a depressive disorder and schizotypal personality disorder. (Tr. 157). Her GAF score was rated as 68.[1]

Between May 8, 2003, and July 16, 2003, Plaintiff received treatment at the Otsego Medical Clinic on several occasions. (Tr. 162-76). The relevant treatment notes reveal that Plaintiff consistently exhibited multiple trigger points without evidence of motor dysfunction, muscle weakness, or sensory impairment. Moreover, Plaintiff consistently received "good immediate relief" with massage treatments. Again, Plaintiff's care providers did not impose any limitations on Plaintiff's activities. *Id.*

On September 5, 2003, Plaintiff participated in a consultive examination conducted by Kenneth Vander Woude, Ph.D. (Tr. 273-77). Plaintiff reported that she was experiencing depression and anxiety. (Tr. 273). Plaintiff reported that she performs "all household chores including cooking, cleaning, laundry, [and] grocery shopping." (Tr. 274). She also reported that she enjoys motorcycling, photography, writing, painting, drawing, rollerblading, golfing, and cross-country skiing. *Id.* The results of a mental status examination were unremarkable. (Tr. 274-76).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). A score of 68 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

Plaintiff was diagnosed with generalized anxiety disorder and depressive disorder. (Tr. 276). Her GAF score was rated as 60.[2] Dr. Vander Woude characterized Plaintiff's prognosis as "good." *Id.*

On September 26, 2003, Dr. John Pai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 284-97). Determining that Plaintiff suffered from a depressive disorder and generalized anxiety disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 285-93). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 294). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. As for whether Plaintiff suffered episodes of decompensation, the doctor reported that there existed "insufficient evidence" to render an opinion. *Id.*

Dr. Pai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 18 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 279-80). Plaintiff's abilities were characterized as "moderately limited" in five categories. With respect to the remaining 13 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

---

[2] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

From October through December 2004, Plaintiff worked approximately 35 hours weekly as an image editor, earning $15 an hour. (Tr. 305-06). This job ended not because Plaintiff was unable to perform its requirements, but simply because "the assignment was complete." *Id.*

On April 9, 2005, Plaintiff completed a report regarding her activities. (Tr. 112-17). Plaintiff reported that on a typical day she washes dishes, performs general housework, washes laundry, walks, and performs yard work and miscellaneous tasks. (Tr. 112). She also reported that she drives, shops, reads, talks on the telephone, goes out to eat, and cares for her personal needs. (Tr. 114). Plaintiff further reported that she enjoys photography, riding her motorcycle, playing golf, canoeing, swimming, snow skiing, socializing, and playing billiards, ping-pong, and darts. (Tr. 112).

Plaintiff testified that she lost her job in March 2003 because of a layoff, not because she was unable to perform its requirements. (Tr. 306-07). Plaintiff further testified that she could still perform her previous job if she was asked to return. (Tr. 307). Plaintiff reported that she had actively been seeking employment and had also been "help[ing] [her] boyfriend in his tree removal business" by picking up sticks and raking leaves. (Tr. 315-16).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) generalized anxiety disorder and (2) depressive disorder. (Tr. 20). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.*

The ALJ first denied Plaintiff's claim at step one of the sequential process, finding that Plaintiff "received SGA-level wages for 2004" and is presently "performing substantial gainful activity (SGA) and/or has demonstrated the ability to perform SGA despite her alleged medical impairments." (Tr. 19). The ALJ further found that because Plaintiff's impairments did not render her unable to perform her past relevant work her disability claim must be denied at step four of the sequential process. *Id.*

---

which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can stand/walk (with normal breaks) for about 6 hours during an 8-hour workday; (3) she can sit (with normal breaks) for about 6 hours during an 8-hour workday; (4) she can only occasionally climb, stoop, or crawl; (5) she might require short breaks, but not such that she would miss any deadlines; (6) she must be able to occasionally move around and must be able to sit/stand every three hours; (7) she might once monthly be unable to complete a normal workday because she will be interrupted by psychologically-based symptoms. (Tr. 21). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

As previously noted, the ALJ denied Plaintiff's claim at step one of the sequential process, on the grounds that she was performing substantial gainful activity. The ALJ further determined (based upon the testimony of a vocational expert) that Plaintiff retained the ability to perform her past relevant work as a graphic artist and, therefore, denied her claim at step four of the sequential process.

a.  Substantial Gainful Activity

As Plaintiff acknowledged at the administrative hearing, she worked 35 hours weekly (for $15 an hour) from October through December 2004. Plaintiff reported that this job ended not because she was unable to perform its requirements, but because "the assignment was complete." The ALJ, therefore, found Plaintiff not disabled. Plaintiff does not challenge the ALJ's conclusion that she was performing (or at least demonstrated the ability to perform) substantial gainful activity (SGA). Rather, Plaintiff asserts that such should not hinder her disability claim because she was working "to stay financially afloat."

The Court is not unsympathetic to Plaintiff's financial plight. Nonetheless, the relevant question is not whether Plaintiff *had* to work, but rather whether her impairments are so severe that she is unable to work. The ALJ concluded that Plaintiff had demonstrated the ability to perform SGA, a determination that is supported by substantial evidence.

b.  Fibromyalgia

Plaintiff claims that she suffers from disabling fibromyalgia. The ALJ, however, concluded that the medical evidence failed to establish Plaintiff's fibromyalgia as a "severe,

10

medically determinable impairment." (Tr. 20). Plaintiff faults the ALJ for failing to characterize her fibromyalgia as a severe impairment. While the Court finds that this particular aspect of the ALJ's decision is not supported by substantial evidence, the ALJ's failure in this regard does not call into question his ultimate determination that Plaintiff is not entitled to disability benefits.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (citations omitted).

The ALJ's conclusion that Plaintiff does not suffer from "severe" fibromyalgia is not supported by substantial evidence. Examinations of Plaintiff consistently revealed the presence of multiple trigger points. Moreover, the ALJ's RFC determination that Plaintiff experiences certain *exertional* limitations is inconsistent with the his conclusion that Plaintiff does not experience a severe physical impairment. In sum, while the Court agrees with the ALJ that Plaintiff's fibromyalgia imposes only minimal limitations on her ability to perform work activities, such does

not diminish the overwhelming evidence that Plaintiff nonetheless experiences severe (as that term is defined by the relevant Social Security regulations) fibromyalgia.

The ALJ's shortcoming in this regard, however, does not alter the outcome in this case. As previously noted, while the ALJ did not find Plaintiff's fibromyalgia to be a severe impairment he nonetheless incorporated various physical limitations into his RFC determination. The ALJ's RFC determination is supported by substantial evidence and adequately takes into account the minimal physical limitations imposed by Plaintiff's fibromyalgia. In this respect, the Court notes that Plaintiff's reported activities are utterly inconsistent with the argument that her fibromyalgia prevents her from performing work activities on a regular and consistent basis.

At step two of the sequential analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment does not constitute reversible error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Ortiz-Rosado v. Comm'r of Soc. Sec.*, 2001 WL 700835 at *1 (6th Cir., June 12, 2001).

Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, noting that he considered "all of the evidence of record." (Tr. 22). This sufficiently indicates that the ALJ properly considered the combined effect of Plaintiff's various impairments. *See Loy v. Sec'y of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

Accordingly, even though the ALJ failed to recognize that Plaintiff suffers from "severe" fibromyalgia, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

Recognizing that Plaintiff is not represented in this matter, the Court has interpreted her pleadings indulgently, as required by law. Moreover, while the Court cannot act as counsel for Plaintiff, the undersigned has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any additional defects or deficiencies. This review revealed nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court does not doubt that Plaintiff's impairments impose upon her some degree of discomfort and limitation, the ALJ's determination that such are less than disabling in severity is supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: June 25, 2007              /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge